A. E. Ullom and Alice Ullom v. Commissioner.
Ullom v. Commissioner
Docket No. 66959.
United States Tax Court
T.C. Memo 1958-201; 1958 Tax Ct. Memo LEXIS 25; 17 T.C.M. (CCH) 994; T.C.M. (RIA) 58201; November 28, 1958
*25 Held, petitioners have not shown that respondent committed error in disallowing a part of the deduction claimed by petitioners under section 23(a)(1)(A) of the Internal Revenue Code of 1939 for traveling expenses while away from home in the pursuit of a trade or business. Eugene J. Brenner, Esq., 1105 Mills Tower, San Francisco, Calif., for the petitioners. Leslie T. Jones, Jr., Esq., and Aaron S. Resnik, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the taxable year ended December 31, 1953, in the amount of $463.46. Two errors were assigned, as follows: "(a) The Commissioner has erroneously disallowed any allowance for travel expenses of petitioners over the amount of $600.00 for the year in question *26 although petitioner, A. E. Ullom, incurred travel expenses of $1,037.26 for which he was reimbursed and travel expenses of more than $2,500.00 for which he was not reimbursed, or a total travel expense of more than $3,537.26 in said year. "(b) The Commissioner, in computing adjusted gross income for said year, allowed only the sum of $600.00 as travel expense; and has erroneously considered the petitioner, A. E. Ullom, as 'away from home' less than the period claimed (322 days) during said taxable year." Findings of Fact Some of the facts were stipulated and they are so found. Petitioners, husband and wife, filed a joint return on the cash receipts and disbursements basis for the calendar year 1953 with the district director of internal revenue for the first district of California, at San Francisco. During the taxable year 1953 petitioner A. E. Ullom, hereinafter sometimes referred to as petitioner, was continuously employed by Pacific Gas & Electric Co., hereinafter sometimes referred to as PG&E, doing construction work, specifically as an operator of heavy equipment. Petitioner's employment with PG&E as a member of the "floating crew" required him, for the exigencies *27 of the employer's business, to go to whatever job site his employer sent him in California in the construction of electrical installations. The locations in California where petitioner worked during the first 11 months of the taxable year 1953, [1] together with the number of days he worked at each location, are as follows: Location
No. of Days
Panoche Sub
55
Bakersfield
57
Coalinga
83
Antioch
34
Tracy and Redwood City
11
Antioch
9
Williams
85
December 1953
31
Total
365
When changing job locations petitioner would first move his equipment and then return to pick up his trailer. He would move the trailer to the next job location. During all of 1953 petitioners' daughter and son-in-law lived in Kettleman City, California, in a home owned by them. Petitioners used this residence as their permanent address during all of 1953. They had a room in the house that they used when there. It was seldom used by anyone else and petitioners owned the bed clothing and linen. They contributed to the cost of maintaining the house and purchased items such as gas, oil, food, *28 utensils, and kitchenware. Petitioner, together with his son-in-law, built a fence at the house. Petitioners had a harmonious relationship with their children, and used the house to entertain their friends. No effort was ever made to apportion household expenses. Petitioner had a hobby of keeping parakeets, and built an aviary in Kettleman City. Petitioner listed Post Office Box No. 926, Kettleman City, as his home address on his driver's license and on his insurance. It was also the address listed on his 1953 income tax return. Petitioners regularly attended a church in a town near Kettleman City, there being no church of their denomination in Kettleman City. They considered themselves members of the congregation and attended the social functions of the church. During 1953 petitioner was looking at property to buy in Kettleman City. Petitioners returned to Kettleman City nearly every week end until the latter part of the year when the frequency was one or two week ends a month. They also spent a part of their vacation there. On September 1, 1952, PG&E entered into an agreement with Local Union No. 1245 of the International Brotherhood of Electrical Workers. Part III of this agreement *29 applied only to field employees of the general construction department of PG&E. Title 301 of Part III dealt with expenses and provided, in part, as follows: "301.2. Expense allowances provided for in Section 301.3 * * * shall be paid to an employee only when the job headquarters to which he has been transferred, or the new location at which he has been reemployed, or the point of assembly to which he is instructed to report is outside the boundaries of his residence area. Each employee shall advise Company of his established residence area and of any changes subsequently occuring [occurring] therein. As used herein 'residence area' means: * * *
"(c) Any other city or town in Company's system, together with the territory extending for a distance of two (2) miles beyond the limits of such city or town. "301.3. Subject to the conditions set forth herein an employee shall be entitled to expense allowances as follows: * * *
"(c) Any such employee may elect to provide his board and lodging by the use of his personal automobile trailer or other comparable facilities regularly used for such purpose, in which event Company shall reimburse him for board and lodging expense *30 in an amount not to exceed three dollars ($3.00) per day * * *" During 1953 petitioner was covered by the above union agreement and under the terms thereof was entitled to an "expense allowance" of $3 per day whenever he was outside of his "residence area." Petitioner's residence area under the agreement was the area in and around Kettleman City. During 1953 petitioner was paid $3 per day as an "expense allowance" for 313 days outside of his residence area for a total of $939. In addition thereto, and also under the terms of the union agreement, he was paid transportation expenses for traveling to various job sites from Kettleman City in the amount of $98.26. Total payments made to petitioner under the terms of the union agreement in 1953 totaled $1,037.26. During the taxable year, petitioner and his wife lived in a trailer which was moved from job site to job site. This mode of living they found more economical than living in a hotel or motel. Because of the illness of petitioner's wife she spent a part of the year with her daughter in Kettleman City recuperating. She also spent some time in Kettleman City caring for her daughter who was ill during the year, and on another occasion *31 petitioner's wife spent about 3 weeks in San Francisco caring for another daughter during her illness. When petitioner was sent to a job site he was informed of the approximate length of time he would be there. On occasion he knew several job sites in advance where his job sites would be and approximately how long he would be required to be there. In their tax return for 1953 petitioners deducted net unreimbursed "travel expense" in determining adjusted gross income in the amount of $1,840.13, which amount petitioner determined as follows: Meals (322 days)
$ 966.00
Lodging (322 days)
966.00
Use of automobile
847.13
Total
$2,779.13
Less: Reimbursement
939.00
Amount deducted on return
$1,840.13
The respondent in a statement attached to the deficiency notice increased the adjusted gross income as disclosed by petitioners' return by two items (a) $98.26 and (b) $2,179.13, and explained these two items as follows: "(a) Available information discloses that the per diem allowance as reported was understated by $98.26. Your income has been increased accordingly. "(b) Since you have failed to establish the fact that you maintained an established home during *32 the taxable year, it is held that you were not in a travel status 'away from home' for the period claimed. "Travel expense claimed as a deduction from salary has therefore been decreased $2,179.13 representing the disallowance of that portion of the expenses which are held to constitute a personal expense and not an allowable deduction, as shown below: "Travel expenses claimed
$2,779.13
"Travel expenses allowed
600.00
"Decrease
$2,179.13"
Opinion The question involved in this proceeding is the deductibility of traveling expenses while away from home. The applicable statutory provision, section 23(a)(1)(A) of the Internal Revenue Code of 1939, allows as a deduction expenses of travel, including meals and lodging, when away from home in the pursuit of a trade or business. Here, the major question is whether or not petitioner was away from home when the expenditures were made. It now seems clear that for the purposes of the taxing statute "a taxpayer's home means his place of business, employment, or post or station at which he is employed." Raymond E. Kershner, 14 T.C. 168. That petitioner and his wife made their home in the trailer which was moved *33 from job location to job location we think is established by the record. The fact that there was a room in his daughter's house at Kettleman City which he called "home" and which he and his wife occupied when they were there over week ends is really of little consequence. Nor is it of consequence that his wife spent some time at the home of her daughter when she was recuperating from an illness, or that she went back to Kettleman City later in the year to care for her daughter when the latter was ill. These experiences are natural and customary in a family, and it in no way reflects on the fact that petitioner and his wife were keeping house in a trailer which they moved from place to place as his work required. Kettleman City may have been petitioner's address for mail and it may have been their domicile but we do not think it was their place of abode or their home for tax purposes. Our holding that petitioner's home was in the trailer as they moved from place to place finds support in the case of Wilson John Fisher, 23 T.C. 218, affd. (C.A. 7) 230 Fed. (2d) 79, involving a professional musician, a native of Milwaukee, Wisconsin, who performed in hotel *34 dining rooms and cocktail lounges throughout the country. His family lived and had their place of abode wherever petitioner happened to be working. Fisher paid part of the telephone bill at his mother-in-law's apartment in Milwaukee and maintained a mailing and voting address in Milwaukee. We held that Fisher, while away from Milwaukee, was not away from "home" and in affirming our decision, the Seventh Circuit, among other things, said: "We think the Court correctly found, on the evidence contained in this record and the material portions of which follow, that taxpayer's home and place of business coincided for the periods in question:" Nor do we think that the recent per curiam decision by the Supreme Court in Peurifoy v. Commissioner, - U.S. - (Nov. 10, 1958), affirming C.A. 4, 254 Fed. (2d) 483, which had reversed 27 T.C. 149, in any way aids petitioners. One further matter remains to be considered. The respondent in his deficiency notice has allowed petitioners a deduction of $600. It is not clear whether this allowance is for travel expenses or for business expenses but in any event no point is raised about it in this case other than the petitioners' *35 contention that a larger sum should be allowed. As we have heretofore stated, we find no basis for an allowance in excess of that allowed by the Commissioner. Decision will be entered for the respondent. Footnotes
1. The record does not show where petitioner worked during the month of December 1953.↩